*O. J. Glessner*, for appellee.

------

## COGHILL *v*. THE STATE.

CRIMINAL LAW.—*Obstructing Railroad Track*.—Section sixty-six of the "act defining misdemeanors and prescribing punishment therefor," 2 G. & H. 475, does not repeal section twenty-nine of the "act defining felonies and prescribing punishment therefor," 2 G. & H. 446.

APPEAL from the Fountain Circuit Court.

BUSKIRK, J.—The appellant was indicted, tried, convicted, and sentenced to the state prison, for the term of two years, for obstructing a railroad track. The court overruled motions for a new trial and in arrest of judgment, and the appellant excepted. The evidence is not in the record, and, consequently, we shall presume that the verdict was sustained by the evidence. The motion in arrest of judgment raises the question of whether the indictment was sufficient.

The appellant presents for our consideration and decision but one question, and that is, whether the section of the

statute upon which this indictment was based has been re-pealed. The indictment was founded upon section 29 of the "act defining felonies and prescribing punishment therefor," approved June 10th, 1852, which reads as follows:

"Sec. 29. If any person shall wilfully and maliciously place any obstructions upon the track of any railroad, or change any switch, or remove the fastenings thereof, so as to endanger the passage of trains, or break, destroy, steal, take or carry away any lock or guard upon such switch, or wil-fully commit any other act to throw the engine or cars run-ning upon such railroad from such track, he *shall be impris-oned* in the state prison not less than one, nor more than seven years; and if, from any accident on any such road, resulting from any such act, any person be so injured that death ensue as the immediate consequence thereof; the per-son so offending shall be deemed guilty of murder in the second degree, and upon conviction shall be imprisoned in the state prison during life." 2 G. & H. 446.

It is maintained, with great earnestness and ability, that the above section was repealed, by *implication*, by *section 66* of "the act defining misdemeanors and prescribing punish-ment therefor," approved June 14th, 1852, which reads as follows:

"Sec. 66. Every person who shall, in any manner, ob-struct any public highway, railroad, towpath, canal, turn-pike, plank or coal road, or injure any toll or other bridge, or toll-gate, culvert, embankment, or lock, or make any breach in any canal, or injure any material used in the con-struction of such roads and canal, such person, and all other persons aiding and abetting therein, shall be fined not exceed-ing five hundred dollars, or imprisoned *not exceeding three months*; and upon prosecution for obstructing a highway, it shall be sufficient to prove that *it is* used and worked as such." 2 G. & H. 475.

The only error assigned and relied on in argument *is*, that section 29 of the felony act was repealed by section 66 of the misdemeanor act. Is the position well taken? Sedgwick,

Coghill *v.* The State.

in his valuable work on Statutory and Constitutional Law, p. 127, states the law as follows: "So in this country, on the same principle, it has been said that laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject; and it is, therefore, but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together."

It was held by this court, in *Blain* v. *Bailey*, 25 Ind. 165, that "it is a maxim in the construction of statutes, that the law does not favor a repeal by implication, and it has accordingly been held that where two acts are seemingly repugnant, they must, if possible, be so construed that the latter may not operate as a repeal of the former." *Bowen* v. *Lease*, 5 Hill, N. Y. 221; *Bruce* v. *Schuyler*, 4 Gilm. Ill. 221; Dwar. Stat. 674. It has also been held, in pursuance of this maxim, that an act is not repealed by implication where the legislature had no intention to repeal it. *Tyson* v. *Postlethwaite*, 13 Ill. 727."

It was held by the Supreme Court of the United States, in the case of *Norris* v. *Crocker*, 13 How. U. S. 429, that, "as a general rule it is not open to controversy, that where a new statute covers the whole subject-matter of an old one, adds offences, and prescribes different penalties for those enumerated in the old law, then the former statute is repealed by implication; as the provisions of both cannot stand together. To ascertain whether there be a repugnance, the two enactments must be compared."

The principles enumerated in the above authorities meet with our entire approval. To constitute a repeal by implication, the new statute must cover the whole subject-matter of

the old one, and prescribe different penalties.    Let us compare the two enactments.

Under the first statute, it is essential that the act should be done wilfully and maliciously.    Malice is an essential ingredient of the crime.    The following definition of malice was given by the learned judge who presided at the trial of John W. Webster for the murder of Dr. George Parkman: "Malice, in this definition, is used in a technical sense, including not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive.    It is not confined to ill will toward one or more individual persons, but is intended to denote an action flowing from any wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief.    And, therefore, malice is implied from any deliberate or cruel act against another, however sudden." *Commonwealth* v. *Webster*, 5 Cush. 295.

By the latter statute, the offence is complete without malice. By the first statute, the offence consists in placing an obstruction upon the track of the railroad, or changing a switch so as to endanger the passage of trains.    By the last statute, the offence does not necessarily consist in placing the obstruction upon the track, and not at all with the intention of endangering the passage of trains.    The *gravamen* of the crime, under the first statute, consists in wilfully committing any act to throw the engine or cars running upon a railroad from the track.    This wicked intent is not necessary to create the offence under the latter act.    There is a wide and marked difference between the two enactments in another respect. In the first section, it is provided that if death results as the immediate consequence of any accident caused by such obstruction, the person placing such obstruction upon the track shall be deemed guilty of murder in the second degree, and upon conviction shall be imprisoned in the state prison during life.

The new act contains no such provision.    The last act

does not cover the entire subject-matter of the first. The two may subsist together, and both may be executed; the first, when the act is done wilfully, maliciously, and with the intent and for the purpose declared therein. The second may be enforced when the act is done without malice, and without the intent necessary to constitute the crime under the first act, but is done mischievously, carelessly, or negligently. These sections can subsist together, and be enforced in the same manner that section 12 of the felony act, and section 3 of the misdemeanor act subsist together, and are enforced. There is just the same difference between the crimes declared by such sections as exists between those under examination. The one is called malicious mayhem, and the other simple mayhem. To constitute the one, the act must be done "on purpose and of malice aforethought." When thus done, the act constitutes a felony, and the punishment is confinement in the state prison for not less than two nor more than fourteen years. To constitute the other, the act must be done "violently and unlawfully," and the punishment is a fine and imprisonment in the county jail, not exceeding six months, and not less than twenty days. The degree of criminality and punishment is made to depend upon the presence or absence of malice and a wicked intent. So with the enactments under consideration.

It was said by this court, in *Blain* v. *Bailey, supra,* that "an act is not repealed, by implication, when the legislature had no intention to repeal it." The repeal of laws is made in two ways; the one by a direct and express repeal; the other, by the passage of a new act which covers the entire subject-matter of the old one, and presents different punishment, and creates such an irreconcilable repugnancy between the acts that both cannot subsist together. The section upon which the indictment under consideration was based was especially and solely intended for the protection of railroads and the preservation of the lives of persons who travel thereon. The main purpose of the other was the protection of highways and canals. The protection of railroads did not con-

stitute the principal purpose.    Section 66 of the misde-
meanor act, with the exception of the word railroad, will be
found, in substance, in all our criminal codes from the organi-
zation of our state government, while section 29 was enacted
after the introduction of railroads in our State.    The new
condition of things created the necessity for a new law.

   We are unwilling to believe that the legislature ever in-
tended to provide that a fine, not exceeding five hundred dol-
lars, and imprisonment not exceeding three months in the
county jail, was an adequate punishment for wilfully and
maliciously placing an obstruction upon the track of a rail-
road for the purpose of endangering the passage of trains.
Men do not usually commit crime without a motive, and we
can ordinarily understand the motives that prompt men in
the commission of crimes.    We can comprehend the motive
of the man who slays another who had cruelly wronged him
or those who were near and dear to him, or of the man who,
actuated by avarice, commits larceny, forgery, or robbery, or
imbrues his hands in the blood of his fellow-man, or of the
man who, carried away by his lust, outrages an innocent
and unprotected woman.    We can readily comprehend the
motives that prompt to the commission of the above and
many other crimes that have disgraced and dishonored the
human family in all ages and in all countries.    But we are
unable to comprehend any sufficient and adequate motive
that could induce any human being, who was created in the
image of God, and endowed with any of the feelings of
humanity, to commit so cruel, remorseless, and horrible an
act as to place an obstruction upon the track of a railroad,
whereby hundreds of men, women, and children, who had
never wronged him, and against whom he has no personal
malice, might be killed.    Such a person could not hope to
profit by his crime, as the wrecker upon the sea shore, who
by false lights decoys a vessel to destruction, and then robs
the crew and passengers.    A malicious and revengeful man,
who believed that he had been wronged by the officers of a
railroad, might be tempted to destroy the property of the

company, or endanger the lives of those he believed had injured him; but a man must be a demon in human shape, who, for the sake of revenging himself upon those he hates, could break the limbs, mangle the bodies, and destroy the lives of entire strangers, who had never, by thought, word, or act, wronged him, his family, or property. A person capable of committing so horrible and revolting a crime must be the enemy of all mankind. The existence of such fiends in a Christian and civilized country strongly tends to support the doctrine of "original sin and total depravity."

It is laid down by Sedgwick, that "laws are presumed to be passed with deliberation, and with full knowledge of existing laws," and, we add, with full knowledge of the character and purpose of existing laws.

Attributing to the wise men who enacted the two statutes under consideration full knowledge as to the existence, character, and purpose of section 29 of the felony act, our minds cannot be brought to the conclusion that they intended to repeal such section by the passage of section 66 of the misdemeanor act.

We are clearly of the opinion that the last act does not cover the entire subject-matter of the former act, and that there is no irreconcilable repugnancy between the two acts. They can stand together. Both can be executed. There is nothing in this case to induce us to relax the strict rules of construction. The appellant cannot justly say that justice has been administered to him without mercy.

The judgment is affirmed, with costs.

*J. McCabe*, for appellant.

*R. B. F. Pierce* and *B. W. Hanna*, Attorney General, for the State.