## WATSON v. THE STATE.

CRIMINAL LAW.—*Jury.*—*Excusing Juror.*—*Judicial Discretion.*— During the term of court at which a criminal cause was pending for trial, the court discharged the jury from further attendance until a later day in the term, and, at the same time, over the objection of the defendant in such cause, excused altogether certain of the jurors who had expressed an opinion that the defendant was guilty.

*Held,* that the court had exercised its discretion fairly, and that the defendant can not complain thereof.

SAME.—*Murder.*—*Evidence.*—*Dying Declarations.*—On the trial of a defendant indicted for murder, the dying declarations of the deceased are admissible in evidence when it clearly appears, that, at the time they were made, he was aware that death was rapidly approaching.

SAME.—*Premeditation.*—Where sufficient time has elapsed between the killing and an angry altercation between the deceased and the defendant for his anger to cool, the killing can not be excused as unpremeditated.

From the Vermillion Circuit Court.

*M. G. Rhoads, R. A. Parrett* and *J. C. Sawyers,* for appellant.

*T. W. Woollen,* Attorney General, *A. P. Harrell,* Prosecuting Attorney, *R. B. Sears, J. Jump* and *J. D. Cushman,* for the State.

BIDDLE, J.—The appellant was indicted for murder in the first degree, committed in killing Ezra Compton by shooting him, has been tried by a jury and found guilty, as charged, and is now under the sentence of the law to suffer death.

He appeals to this court, and his counsel have prepared and presented for our consideration three questions:

1. On the fourth day of the term of court at which the appellant was tried, the court, having no further need of a petit jury until the fourteenth day of the term, over the objection of the appellant, discharged the jury until said fourteenth day, but excused three of said jurors from returning on said day, upon the ground "that the three jurors who were excused were residents of the same township in which it was charged the offence, for which the defendant was indicted, was committed; that they were cognizant of all the facts, and had each publicly expressed the opinion that the defendant was guilty of the charge against him in the indictment in this cause; but' it was not stated by the court whether this was the cause or not."

On the fourteenth day of the term the jurors all returned to their duty, except the three who had been so excused. When this case was called for trial, the appellant demanded to be tried by the full regular panel, "whereupon, and before the jurors were sworn, the court said to the counsel, that, if they desired the presence of the three jurors mentioned, the court would order a venire and send for them, to which the counsel only responded that they had made the objection in good faith, whereupon the court overruled the objection, and directed the sheriff to fill the vacancy occasioned by the absence of said three jurors, as aforesaid, from the special venire ordered by the court."

We do not see any error in discharging the three jurors for the reasons assigned. It was within the fair discretion of the court. The appellant was not injured by discharging the jurors who had expressed their opinions, before trial, that he was guilty of the crime charged against him, and he can not complain of the ruling. There is no point made that the jurors, who tried the case, were not all good and lawful men, as the law requires.

2. The court admitted certain dying declarations of the deceased to be given in evidence. Of this ruling the

appellant complains because, as he alleges, the deceased was not, in fact, in a dying condition at the time he made the declarations, and, if so, he was not impressed with the fact of his approaching death.

A physician, who attended the deceased upon the day he died, testified: "The deceased suffered intense pain and was flighty. I think he was cognizant that he could not live, but did not so express himself to me. * * Do not wish to say that Compton knew he must die, but it seemed that, at last visit, it was patent to all that he must die. * * I did not tell Compton, nor any one in his presence, that he could not recover."

Other evidence shows, that, in a few minutes after he was shot, which occurred at his store, the deceased went to his house. His wife testified as follows:

"My husband said when he came in, 'Don't take on the shot will kill me; I'll not get well.' * * The morning of the next day, being the day he died, he said to me he could not get well; he said that all along, from the first to the last talk we had about it; he could scarcely speak above a whisper. He told me when and how he wanted to be buried, the same evening after he was shot. He never expressed any hope of recovery, but said all the time he could not get well. Don't think he asked for a physician at all. On Saturday morning, the day he died, he told me how the trouble occurred."

The mother of the deceased testified, that the deceased came to the house about two or three o'clock P. M., on the day he was shot; that he died about the same time on the next day, and that she was with him all the time until he died; that "He said he was killed; that he could never get well; he said, 'Mother, I never can, never can get well; I am killed.' He told me that on Saturday morning; he told me on Friday he was killed."

Upon this evidence the court, over the objections of the

appellant, permitted the dying declarations of the deceased to be given in evidence to the jury.

We believe that the rule governing the admission of dying declarations was well announced in the case of *Morgan* v. *The State*, 31 Ind. 193, in the following words:

"The only safe rule for the admission of such declarations is, that the declarant must be fully persuaded that death is rapidly approaching; that it is so near that all motives to falsehood are superseded by the strongest motives to strict veracity; and that the proof render this condition of the mind clear to the judge before whom it is offered." See also *Binns* v. *The State*, 46 Ind. 311.

It seems to us that the evidence in this case, of the condition of the deceased, fulfils the rule as above stated, and that the court did not err in admitting evidence of the dying declarations of the deceased to go to the jury.

3. After discussing the above questions, the counsel for the appellant say:

"As to the other reasons for a new trial, that the evidence is not sufficient, and the verdict is contrary to law, we need only to ask the court to read over the evidence and consider it."

No argument is made upon these questions by the counsel, except to state three propositions:

1. That the evidence does not disclose any motive for the murder;

2. That the quarrel between the appellant and deceased excited the appellant's anger, which did not and could not cool during the brief interval that elapsed before the shooting was done; and,

3. That there was no premeditation shown.

Perhaps so brief a statement as this would have authorized us to hold that the questions under consideration were waived for want of an argument; but, as the case is

capital, we were not satisfied to do so. We have, there-
fore, fully examined and considered the evidence in the
case. It convinces us that there was no reasonable cause
for anger on the part of the appellant, and that, if he be-
came angry, sufficient time elapsed for his anger to cool
before he shot the deceased, and that the deed was done
with premeditation.

Upon the whole case, we are satisfied, beyond a reasona-
ble doubt, that the verdict is sustained by sufficient evi-
dence, and that it is not contrary to law.

The judgment is affirmed, at the costs of the appellant.