No. 10,541.

## McDermott*v.* The State.

CRIMINAL LAW.—*Continuance.*— *Witness.*—*Diligence.*—An affidavit by a defendant for a continuance on account of the absence of a material witness resident of another State, but so near that his deposition might have been taken, which shows no reason for omitting to take the deposition, save that the defendant was in jail, fails to show due diligence.

SAME.—A continuance applied for on account of the absence of witnesses who appear personally in court should be refused.

SAME.—*Murder.*— *Use of Weapon.*—*Intention.*—*Presumption.*—Where a homicide is caused by the intentional use of a deadly weapon in a manner likely to kill, a malicious intention to kill is a legal presumption, unless it occurred in self-defence, or on a sudden heat caused by such provocation as by law reduces the killing to manslaughter.

SAME.—*Self-Defence.*—A homicide purposely committed is not excusable on the ground of self-defence, unless the accused reasonably believed it necessary to save his own life, or avoid great bodily harm; but one may reasonably defend himself when assaulted, and if thereby the assailant be unintentionally killed, without a belief that the killing is necessary, the homicide is excusable.

INSTRUCTIONS.—Instructions to the jury must be considered as a whole, and will not be deemed erroneous because, if viewed in separate parts, such parts may be incorrect. For examples, see opinion.

SAME.— *Witness.*—*Impeachment.*—*Jury.*—*Credibility.*—An instruction, which tells the jury how witnesses may be impeached, and that it does not follow that an impeached witness is to be wholly disbelieved, that the jury are to judge of the weight due to such witnesses after considering how far they have been corroborated, does not assume that any witness has been impeached, nor is it otherwise erroneous.

From the Floyd Circuit Court.

*J. V. Kelso, J. G. Howard, J. F. Read, M. Z. Stanard* and *J. K. Marsh,* for appellant.

*F. T. Hord,* Attorney General, *F. B. Burke,* Prosecuting Attorney, and *G. W. Friedley,* for the State.

ZOLLARS, J.—The questions discussed by counsel for appellant, and the grounds upon which a reversal of the judgment is asked, are the alleged errors of the court below in overruling appellant's motion for a continuance, the giving of instructions numbered 7, 9, 12, 14, 16 and 18, and the refusal to give nine instructions asked by appellant. These alleged errors are presented by the record, and will be considered in their order.

Appellant was arrested on the evening of the 3d of October, 1881. On the 12th of the same month an indictment was returned by the grand jury of Clark county, charging appellant with murder in the first degree. On the 14th day of the same month, on application of appellant, the venue was changed to the Floyd Circuit Court. When this order was made the witnesses for the State were required to appear in the Floyd Circuit Court on the 29th day of November, 1881, to testify in the cause on behalf of the State. The transcript was filed in the office of the clerk of the Floyd Circuit Court on the 7th day of November, 1881. The case being called for trial in that court on the 29th day of November, appellant moved for a continuance on account of the absence of certain named witnesses. The court granted time until the hour of meeting on the following morning, for appellant to prepare and file his affidavit in support of his motion for a continuance, and notified him that if the attendance of any of the absent witnesses could be procured at the time given for the filing of the affidavit, the previous absence of such witness or witnesses would not be considered as sufficient cause for a continuance, so far as such cause might be based upon the prior absence of any witness or witnesses who might be present at the time of the filing of the affidavit.

At the time fixed appellant filed his affidavit, based upon the absence of Mat Stephenson, William McCombs, George F. Howard and Eugene Dibble. The two latter named witnesses being present in court, the motion for a continuance was overruled, and appellant excepted.

His counsel now insist that the court below should have passed upon the motion for a continuance without reference to the fact that two of the witnesses named in the affidavit were present in court.

In this we do not agree with counsel. To continue a cause to procure the attendance of witnesses already in court, is not required by law or reason. Mat Stephenson and William McCombs, two of the witnesses named in the affidavit, are not thus shown by the record to have been present. A Mat Stephenson testified upon the trial as a witness for appellant, but whether or not she was the Mat Stephenson named in the affidavit we can not tell from the record; but, conceding that she was not, and that appellant was deprived of the testimony of the two witnesses not shown to have been present, did the court below err in overruling the motion for a continuance? It appears from the testimony that on the evening of his arrest appellant was in company with one Duffy, John Keefe and three or four others, in a saloon in Jeffersonville. A dispute arose among them which continued while they were in the saloon, and after they left, and resulted in appellant being knocked down and kicked and beaten by Duffy. Whether Keefe participated in the fight is a fact about which there is a conflict in the testimony. During the melee appellant used a pocket-knife as a weapon, wounding one of the party slightly and cutting Keefe in the neck, by reason of which he died in a short time. Appellant claims that the whole party were arrayed against him, and that by the absent witnesses he could have proven such facts as would have shown that in all he did he was acting in self-defence. There is no dispute about the materiality of the testimony of the absent witnesses.

It is contended on the part of the State that the court ruled

correctly in denying the continuance, for the reason that appellant did not exercise diligence in procuring the attendance of the witnesses, or in taking their depositions. The excuse offered by appellant in his affidavit is that he was confined in jail from the 3d day of October until the case was called for trial; that he first learned of what the non-resident witnesses would testify to on the 20th day of November, and on the next day caused a subpœna to be issued for said witnesses, which was placed in the hands of the sheriff of Clark county. The subpœna, with the return of the sheriff thereon, is referred to and made a part of the affidavit for continuance. This subpœna contains the names of the two absent witnesses. The return shows that on the 28th day of November it was served upon McCombs and other witnesses, and that Mat. Stephenson was not found.

It is stated in the affidavit that the said Mat Stephenson and William McCombs reside in the city of Louisville, in the State of Kentucky. It is not stated when said witnesses became residents of Louisville, or whether or not they ever were residents of Clark county, or of the State of Indiana. Nor is it stated when appellant learned that they were non-residents of this State, or whether or not he knew this fact at the time the subpœna was issued. For aught that appears in the affidavit, he had knowledge of that fact from the time when he first learned that they were important witnesses. We can not assume that appellant did not know of the non-residence of the witnesses, without a showing upon his part. Keeping in view the fact that if appellant had been ignorant of such non-residence he could easily have shown it in his affidavit, and that the court below must necessarily be allowed to exercise some discretion in granting or refusing a continuance, we think that, for the purpose of this decision, it should be presumed that appellant had knowledge of the non-residence of the witnesses from the time he learned of the materiality and importance of their testimony. To entitle a party to a continuance on account of absent witnesses, it must be shown that he

has exercised due diligence. Sec. 1781, R. S. 1881; *Miller* v. *State*, 42 Ind. 544; *Ward* v. *Colyhan*, 30 Ind. 395; *Leary* v. *Nave*, 66 Ind. 220; *McKinlay* v. *Shank*, 24 Ind. 258; *State* v. *Norman*, 16 Ind. 192. The case of *Ward* v. *Colyhan, supra,* was tried in Vigo county. When the case was called for trial one of the parties applied for a continuance, on account of a witness temporarily in Evansville. In passing upon the refusal of a continuance by the court below this court said: "The defendant was aware of the importance of the witness for four or five days, ample time to have sent to Evansville for him, had he been absent the entire week, by the ordinary mode of travel. This court is bound to know that a few hours would have taken a messenger from Terre Haute to Evansville." In the case of *Leary* v. *Nave, supra,* an application was made in the Marion Circuit Court for a continuance, on account of the absence of a witness, then in Lafayette. The case was called for trial on the 24th day of February, having been previously set down for trial on the 20th of the same month. It is stated in the affidavit for a continuance that the party asking the delay had caused a subpœna to be issued on the 20th, which was returned not found. In speaking of the affidavit this court said: "The affidavit lacks certainty and precision; and we think it fatally defective in failing to state that the affiant was ignorant of the fact that the desired witness was in Lafayette, and of the length of time he had been there, etc. If he was not so ignorant, he might have procured the attendance of the witness or his deposition."

In the case in hearing, no excuse is offered for the neglect to take the depositions of the absent witnesses, except that appellant was confined in jail. This we think is not sufficient. Such an excuse may be offered in all cases of this character, and, if sufficient of itself, might postpone the trial of the cause indefinitely. Appellant, from the day of his arraignment, on the 14th day of October, if not before, up to the day the case was called for trial, had attorneys in his service, competent to assist him. From the time he learned of

the materiality of the testimony of the witnesses the court was in session in Floyd county. An order for the taking of the depositions of the absent witnesses could have been gotten at any time. Louisville being within a short distance and of easy access, the depositions could have been taken within a short time. We think that appellant did not exercise due diligence in procuring the testimony; that no sufficient excuse is offered for the lack of such diligence, and that the court below did not err in overruling the motion for a continuance. The case was tried by a jury, appellant was found guilty of murder in the first degree, and imprisonment for life fixed as the punishment. The only other grounds for a new trial urged in argument are alleged errors in giving and refusing instructions.

After having properly instructed the jury as to what constitutes murder in the first and second degrees, and voluntary and involuntary manslaughter, the court gave the seventh instruction, as follows:

"To constitute either degree of murder there must be a malicious intention to kill. If the killing was done maliciously and purposely, it does not necessarily follow that it was done with premeditation. Premeditation implies that the slayer had time and opportunity for deliberate thought; that after his mind conceived the thought of taking the life he meditated upon it and formed a deliberate determination to do the act; but there need be no appreciable space between the formation of the intention to kill and the killing. The formation of the intention to kill and the killing may be instantaneous, as successive thoughts. After such a determination is so formed, and then carried into execution, no matter how soon thereafter, it is murder in the first degree; otherwise it is not, and it is for the State to show that there was such premeditation beyond a reasonable doubt."

It is insisted that this instruction was calculated to mislead the jury, for the reason that in the latter part of it, in the

statements in relation to premeditation, the element of malice is dropped out, and the jury might and would understand therefrom that a determination to kill, carried into execution, would be murder in the first degree, although such determination may not have been malicious.

The instruction should not be thus dissected and separated. It must be considered as a whole. If an instruction may be thus separated into fractional parts, so that one portion may not limit and qualify, or extend and explain another portion, it will be difficult, if not impossible, to ,form an instruction that will stand such an examination and criticism. In thus separating into parts, the sense may be twisted and tortured so that the most correct may appear to be the most faulty instruction. We think that, taking the instruction under consideration as a whole, it states plainly that to constitute murder in the first degree the intention or determination to kill must be malicious.

In their objections to the ninth instruction given by the court, counsel again separate it into parts, and base their objections upon the definition of malice as contained in the first portion of the instruction. Taken as a whole, we think the instruction states the law correctly. The definition of malice is, substantially, that adopted in the case of *Coghill* v. *State*, 37 Ind. 111, 114. See Moore's Crim. Law, section 839.

Objection is also made to the latter portion of the twelfth instruction given by the court. This portion is a literal copy of an instruction held good in the case of *Jarrell* v. *State*, 58 Ind. 293.

The fourteenth instruction given by the court is as follows:

"Where a homicide is perpetrated by an intentional use of a deadly weapon, in such manner as is likely to and actually does produce death, the law presumes such homicide was committed purposely and maliciously, unless it was done in self-defence or in a sudden heat, caused by such provocation as by law reduces the killing to the grade of manslaughter."

VOL. 89.—13

McDermott *v.* The State.

We think appellant can not complain of this instruction. If he did the killing in self-defence, as he claims, or if he did · it in the heat of passion, under provocation, malice is not imputed to him under this instruction, and he might have been convicted of manslaughter or acquitted, had the evidence justified either.

The substance of the sixteenth instruction complained of is that it is not every assault and battery made upon a person that will justify or excuse him in taking the life of the assailant, but he may purposely do so if the character of the assault is such as to reasonably cause him to believe, and he does believe, that it is necessary to save his own life, or protect himself from great bodily harm; that if appellant was assaulted by the deceased in such a manner as to cause him to reasonably believe, and he did believe, that he was in imminent danger of losing his life, or suffering great bodily harm at the. hands of the assailant, unless he slew him, and that while so believing he struck the fatal blow, the jury should acquit.

It is argued that it was not required that appellant should have believed it necessary to slay the assailant, in order to excuse him in so doing.

Counsel seem to overlook the fact that in this instruction the court is treating of the killing of the assailant *purposely*. Surely, it can not be said that a party may purposely take the life of another under the pretence of self-defence when he had no reason to believe, and did not believe, it necessary to save his own life, or to save himself from great bodily harm. An assaulted party may repel force with force, but the force used must be reasonable, and must at least be used under the belief that it is necessary. Shall it be said that if A. assault B. with a riding-whip, B. may purposely take his life, not believing it necessary to save his own life, or to save himself from great bodily harm? When a party in his defence purposely goes beyond what is reasonably necessary, and beyond what he believes to be necessary, he ceases to act in self-defence, and

becomes an aggressor; and if, under such circumstances, he purposely takes the life of the assailant, he is guilty of murder. The following language, from Mr. Bishop's work on Criminal Law, has been quoted and approved in several decisions by this court: "This right of self-defence is commonly stated in the American cases thus: If the person assaulted, being himself without fault, reasonably apprehends death or great bodily harm to himself, unless he kills the assailant, the killing is justifiable." 1 Bishop Crim. Law, 865; *Presser v. State*, 77 Ind. 274, and authorities cited.

If the latter portion of the instruction should be considered without reference to the word purposely, used in the former part, yet the objection urged by counsel would not be well taken for the reason that this latter part does not require that appellant should have believed it necessary to take the life of the assailant. It is stated simply that if he did so believe with reason, etc., the killing was excusable.

In all cases where the killing of the assailant is purposely done by the assaulted party, he must have acted under the belief that such killing was necessary to preserve his own life, or to save himself from great bodily harm, to render the killing excusable. We do not mean to say, however, that to render the killing excusable the assaulted party must have acted under the belief that the death of the assailant was necessary. As we have said, in proper cases the assaulted party has the right to meet force with force; and if, in a proper defence, death results to the assailant, the killing may be excusable without a belief on the part of the assaulted party that it was necessary for his own safety. In such cases the defence is purposely made, but the killing is not purposely done. It is simply the result of the defence. *Runyan v. State*, 57 Ind. 80 (26 Am. R. 52); Whart. Crim. Law, sec. 1019; Hor. & Thomp. Cases on Self-Defence, 492.

In the seventeenth instruction the court charged the jury as follows: "It is not necessary that the defendant should

McDermott *v*. The State.

have believed it necessary to take the life of the assailant in order to reasonably defend himself, but it is sufficient to excuse the defendant if the death of his assailant resulted from the defendant's reasonable defence of himself."

These instructions, whether considered separately or together, are as favorable to appellant as he had a right to ask.

In the eighteenth instruction given by the court, and of which complaint is made, the jury were instructed of the various modes of impeaching witnesses, and told that it does not follow that, because a witness may be impeached, his testimony shall be entirely excluded from consideration; that in such case it is for the jury to decide for themselves what weight shall be given to the testimony of such witnesses, taking into consideration all corroborating circumstances and testimony, if any exist. It is objected that in this instruction it is assumed that witnesses have been impeached, and that it withdraws from the jury the right to give full credence to the testimony of such witnesses. We do not think that the instruction is open to the objections urged against it.

A number of instructions were asked by appellant which the court refused to give. We have examined each of them carefully, and think there was no error in their refusal. With the exception of perhaps two, which are unimportant to appellant, because not applicable to the case, the substance of the instructions so asked is embraced in those given by the court.

We have now gone over all of the supposed errors pointed out by appellant's counsel in their brief, and have given to each such a careful examination as the importance of the case demands. After such an examination we think there is no available error in the record, and that the judgment should be affirmed. The judgment is, therefore, affirmed.