## Ed Thomas v. The State.

### No. 2589.   Decided December 11, 1902.

**1.—Assault with Intent to Murder—Evidence—Res Gestae.**

On a trial for assault with intent to murder evidence of what occurred between defendant and another party, a short time before the difficulty with prosecutor, .when the prosecutor was not present, was admissible as part of the res gestae, and to show the animus of defendant. The difficulty being a continuous one, it was competent for the State to show how it began.

**2.—Same—Deadly Weapon—Charge.**

On a trial for assault with intent to murder, the court properly submitted that issue although the deadly character of the knife with which the assault was made was not directly proven, it being shown that the wounds inflicted were aimed at a vital part of prosecutor and were so severe that prosecutor was laid up from them for three weeks.

Appeal from the Criminal District Court of Dallas.   Tried below before Hon. Charles F. Clint.

Appeal from a conviction of assault with intent to murder; penalty, three years imprisonment in the penitentiary.

Appellant was charged by the indictment with assault with intent to murder Jack Beer, on the 14th day of August, 1901.

The opinion states the case.

*Thomas, Spellman & Richardson,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of assault with intent to murder, and given three years in the penitentiary.

There is but one bill of exceptions. The court permitted the State to prove by two witnesses (Lee and Helena) : That on the day of the alleged assault, and a short time prior thereto, they passed defendant on the road in West Dallas. That defendant asked Lee to let him ride his bicycle. That Lee asked defendant if he did not have a good deal of gall, to ask a white man to let him ride his bicycle. Defendant answered "yes"; that his father used to drive a gall wagon. That Lee then went on, passing Helena, and that defendant, who was accompanied by his brother, came up with Helena, when the latter remarked, "Lee got the best of you," at which defendant began to curse and abuse Helena, threatening to kill him, whereupon Helena told Lee to stop, which he did. That when the parties came up, defendant drew a knife, or something witness took to be a knife. That Lee said to defendant, "You negroes move on, now, or I will hurt you, and hurt you bad." That about this time one Britton drove up in his wagon, prosecutor Jack Beer riding with him. Lee invited Beer to get out and go with him. That Beer got out of the wagon, and went with Lee. This last occurred several hundred yards from the place of the original difficulty between Lee and defendant with reference to the bicycle; and Beer, the prosecutor, was not present at that time, and did not know what

then occurred. Appellant objected to the introduction of this testimony on the ground that it was extraneous matter, and could shed no light on the transaction under investigation, but was another and different offense, and was highly prejudicial to the rights of defendant. The court explains the admission of this testimony, and refusal to strike it out, as follows: "That there was only a few minutes time between the conversations testified about and the difficulty in which Beer was hurt; that it was all part of the same transaction, and was admitted to show the condition of the defendant's mind, and determination to engage in trouble with anybody, and as evidence of malice towards Beer and every other person with him"—and refers to the evidence in full as to the explanation. Now, referring to the evidence, it will be seen that the difficulty all occurred about what transpired between appellant and Lee when he asked him to let him ride his bicycle, and that the events which culminated in the difficulty followed in rapid succession. It is true, Beer, joined Lee after the first altercation. However, it was but a very short time after Beer joined Lee before they overtook or came up with defendant, who, as they approached, was armed with two rocks. He threw one at Lee, striking his bicycle, and was in the act of throwing the other, when Beer (prosecutor) rushed upon him with his umbrella, and struck him to prevent him from throwing the other rock. Then it was that appellant cut Beer. It occurs to us that all of this testimony was admissible as a part of the res gestæ, although Beer knew nothing of it, but simply interfered to protect his friend from an assault, when he himself was set upon by appellant, and severely cut and wounded. The State had a right to this evidence, as showing the origin of the difficulty—the cause of the assault by appellant on Lee. It showed appellant in the wrong from the start, and while the original transaction was unknown to the prosecutor, Beer, what he did know and see when appellant assaulted the witness Lee authorized him to interfere. What had transpired before showed the animus which actuated appellant, not only with reference to Lee, but with reference to anyone else who might interfere to prevent him from assaulting Lee. This was a continuous difficulty, and it was competent for the State to show how it began.

Appellant complains in the motion for new trial that the court erred in submitting the assault with intent to murder, on the ground that there was no evidence of the kind or character of the knife with which the assault was made, showing it was a deadly weapon. There is no question that appellant had a knife. In his evidence he denies drawing his knife in the first altercation, when witness Lee testified as to his drawing a knife. Though he testified himself, he does not deny cutting prosecutor, Beer, with a knife. The wounds indicate unmistakably knife cuts. One wound was inflicted in the right temple, extending an inch and a quarter in the direction of the right eye. The other was in the left jaw, extending from the ear to the mouth. From the circumstances in which this onslaught was made after appellant

threw the rock, he must have had his knife ready, because, before he could throw the second rock, Beer had interfered and struck him with the umbrella. He then immediately began cutting Beer with what was evidently a knife, though Beer did not see the knife. From the effect of these wounds, prosecutor was confined about three weeks. The wounds, as appears from the testimony, were severe. They were aimed at a vital part of prosecutor, and, although the evidence does not inform us of the size of the knife, we can judge of the deadly character of the instrument from other circumstances in the case. In Walters v. State, 37 Texas Crim. Rep., 388, there was no proof of the character of the knife, further than that it was a pocketknife; but, looking to the grievous character of the wounds, and where they were inflicted, it was held that the proof was sufficient to show the weapon was a deadly one. And for other authorities, see Scott v. State, 42 Texas Crim. Rep., 607; Ashton v. State, 31 Texas Crim. Rep., 479. Judging from the manner of this assault, and from the character of the wounds, where they were inflicted, and their effect upon prosecutor, the court was unquestionably authorized to give a charge on assault with intent to murder. The court also gave a charge on aggravated assault, which was proper. The jury, however, found appellant guilty of assault with intent to murder, and we believe they were authorized to do so.

The judgment is accordingly affirmed.

*Affirmed.*

[Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]