HELMS *v.* STATE OF INDIANA.

[No. 31,140. Filed October 30, 1968.]

*James D. Lopp, Sr., James D. Lopp, Jr.,* and *William J. Brune,* of Evansville, for appellant.

*John J. Dillon,* Attorney General, and *R. Robert Yeager,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Anthony Kent Helms, appellant, from a conviction of murder in the second degree after trial by jury in the Warrick Circuit Court.

The indictment returned and filed by the grand jury, charging the defendant with murder in the first degree, omitting the caption, reads as follows:

"The Grand Jurors of Warrick County, in the State of Indiana, good and lawful men, duly and legally impaneled, charged and sworn to inquire into felonies and certain misdemeanors in and for the body of said County of Warrick

in the name and by the authority of the State of Indiana, on their oath present that Anthony Kent Helms on the 30th day of January, A.D., 1966, at said County and State aforesaid, did then and there unlawfully, feloniously and purposely, and with premeditated malice, did kill and murder a human being, to-wit: Floyd W. Williams, by then and there unlawfully, feloniously, purposely and with premeditated malice shooting at and against the said Floyd W. Williams with a certain deadly weapon, to-wit: a pistol, then and there loaded with gun powder and bullets, and thereby inflicting a mortal wound upon the said Floyd W. Williams, of which mortal wound the said Floyd W. Williams did then and there die. And so the Grand Jurors aforesaid upon their oath aforesaid, do say and charge that the said Anthony Kent Helms, in manner and form aforesaid, unlawfully, feloniously, purposely and with premeditated malice, did kill and murder the said Floyd W. Williams, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana.

s/s  John  Burley  Scales
John  Burley  Scales,
Prosecuting  Attorney

RECORDED THIS 11 day of January, 1966.

WOODROW W. HOLDER
CLERK OF THE WARRICK CIRCUIT COURT

No. 5976
WARRICK CIRCUIT COURT
JANUARY TERM, 1966
THE STATE OF INDIANA
VS
ANTHONY KENT HELMS

INDICTMENT FOR MURDER, FIRST DEGREE (10-3401)

A True Bill

Norman E. Bertram

Foreman"

Appellant's assignment of error presents several causes alleged in his motion for a new trial. Causes 1, 2, 3 and 4 assert the trial court committed error in overruling appel-

lant's plea in abatement and motion for new trial on said plea, and cause #5 urges error on the part of the trial court in overruling his motion to quash the indictment.

Essentially the alleged errors alleged in the overruling of appellant's plea in abatement and motion to quash, causes 1, 2, 3, 4 and 5 above, are predicated upon the fact that the indictment contained the pre-typed words "A True Bill" rather than in the personal handwriting of those words by the grand jury foreman upon the returned bill. However, the indictment *was* also personally *signed and endorsed by the foreman.* This court has never passed upon the specific question presented here. Ind. Anno. Stat. § 9-901 (1956 Repl.) provides as follows:

> "Indictment—How found—At least five (5) of the grand jurors must concur in the finding of an indictment; and when so found it must be signed by the prosecuting attorney; and it must also be endorsed by the foreman of the grand jury, 'A True Bill' and he must subscribe his name thereon as foreman." (Acts 1905, ch. 169, § 110, p. 584) and:

Ind. Anno. Stat. § 9-902 (1956 Repl.) provides in part as follows:

> "Neglect to endorse or sign—Court order—As soon as the grand jury has returned an indictment into court, the judge must examine it; and if the foreman has neglected to endorse it, 'A True Bill', with his name signed thereto, . . . the court must cause the foreman to endorse it . . . in the presence of the jury."

This latter section also requires the indictment be signed by the prosecuting attorney.

An interpretation of the two sections set out above is necessary to the determination of the precise question presented by the assignment of error under causes 1, 2, 3, 4 and 5 above. The appellant, in support of his allegations of error, cites the following cases: *Terrell* v. *Commonwealth* (1922), 194 Ky. 608, 240 S. W. 81; *Johnson* v. *State* (1864), 23 Ind. 32;

*Heacock* v. *State* (1873), 42 Ind. 393; *Cooper* v. *State* (1881), 79 Ind. 206. He also cites Ind. Anno. Stat. §§ 9-901 and 9-902, *supra,* as requiring a voiding of the indictment.

In the *Terrell* case, it appeared that upon the back of the indictment there was a signature of one, "G. W. Eversole" and immediately thereunder and slightly to the right, was the endorsement "a true bill." The order of the court recited that it was received in open court from the hands of the foreman and in the presence of the grand jury, and was handed by the foreman to the clerk and was marked filed as required by law. The Kentucky Court of Appeals in commenting upon the alleged defect stated:

> "The purpose of the requirement that the indictment shall be indorsed 'a true bill,' and that it shall be signed or certified as such by the foreman of the grand jury, is to unerringly identify the indictment and to evidence the fact that it was concurred in by the grand jury in the manner required by law, and such indorsement constitutes the only competent evidence that the paper filed is an indictment legally found." 240 S. W. at 83.

However, we fail to perceive the applicability of *Terrell, supra,* as support for the appellant's contention of error, since in that case the *judgment was affirmed.*

In *Johnson* v. *State, supra,* this court stated:

> "In this case there was a motion to quash the indictment because it was neither endorsed 'a true bill' nor signed by the foreman of the grand jury."

Thus, on its facts, the *Johnson* case has no relevancy to the instant case.

In *Heacock* v. *State, supra,* the indictment was not signed by the prosecuting attorney as required by statute and the court held that the indictment was not properly returned and a motion to quash should have been sustained. Likewise, *Heacock* has no application to the case at bar. Ind. Anno. Stat. § 9-902, *supra.*

In *Cooper* v. *State, supra,* the record as reviewed by this court stated that the

"Indictment copied in the record reveals the lack of the requisite endorsement. The defect is apparent upon an inspection of the pleading . . . The endorsement is made by statute an essential element of the indictment, and its absence is a defect for which a motion to quash will lie."

Therefore, the facts in *Cooper* also make that case inapplicable to the matter before us.

The appellant cites *State* v. *Bowman* (1885), 103 Ind. 69, 2 N. E. 289, for an incorrect proposition. In that case, this court held that it was error to quash an indictment merely because the name of the foreman is endorsed in the wrong place. Likewise appellant's citation to *Strange* v. *State* (1886), 110 Ind. 354 is not in point for in the instant case there is an indorsement, and appellant's citation of *State* v. *Bunten* (1889), 123 Ind. 124 is not applicable since the indictment here does contain the words "a true bill."

For all the foregoing reasons we hold that the cases cited by the appellant do not sustain his contention that the indictment was fatally defective.

The specific question presented by this appeal relative to the validity of the indictment returned has not heretofore been decided in Indiana. However, in the Ohio case of *Ruch* v. *State* (1924), 111 Ohio St. 580, 146 N. E. 67, which was decided under a statute similar to Ind. Anno. Stat. § 9-901, *supra,* it was held that the mere fact that the words "A True Bill" were printed on the usual indictment form on the back thereof and the foreman signed only his name did not invalidate the indictment.

The court stated very clearly that:

". . . These are formal matters required by law but they are of an exceedingly technical nature, and it is difficult to see how in any event the defendant has been prejudiced" 146 N. E. at 69.

In the present case, therefore, we hold that the error alleged and argued by the appellant in his brief under causes numbered one thru five is without merit. This holding is consistent with our recent decision in *Froedge* v. *State* (1968), 249 Ind. 438, 233 N. E. 2d 631, relative to an alleged technical defect in an indictment under the provisions of Ind. Anno. Stat. § 9-1127 (1956 Repl.). That statute provides, in part:

> "No indictment . . . shall be deemed invalid, nor shall the same be set aside or quashed . . . for any of the following defects . . . Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon its merits."

In holding that appellant's asserted errors numbered 1 through 5 are without merit, we are

> "in harmony with the modern trend of judicial thinking under similar statutes evidencing as they do an intent to eliminate technical and formal defects which in no way prejudice the defendant or affect his substantial rights. This is a judicial postulate that is necessary to the administration of justice and the elimination of narrow technical formalism in the theory and applications of the principles of criminal law . . ." *Froedge* v. *State* (1968), 249 Ind. 438, 233 N. E. 2d 631.

This principle is also sustained in *State* v. *Bowman, supra.*

Other matters contained in the appellant's motion to quash alleged (1) that the indictment does not state facts sufficient to constitute a public offense; and (2) that the indictment does not state the offense charged with sufficient certainty. These matters are not sustained by cogent argument and are unsupported by case law citations in appellant's brief and are therefore waived. *Oldham, Davis* v. *State* (1967), 249 Ind. 301, 231 N. E. 2d 791. Supreme Court Rule 2-17 (i).

Appellant's assignments of error numbered 6, 7, 8 and 9 of his motion for new trial are grouped together for the purpose

of this opinion since all of these alleged errors involve the same principle of law. The appellant contends that the trial court erred in sustaining the objections of the State of Indiana to certain questions propounded by the defendant, and in over-ruling the defendant's offers to prove in each instance.

The questions, answers, objections by the State, ruling of the court on the objections and ruling on the defendant's offers to prove are as follows:

"Q. Where did you see the decedent in September of '65,

A. Outside of the city limits. Out behind Scales Lake.

Q. And what was the occasion for you to see him out at Scales Lake at that time"

OBJECTION: BY PROSECUTOR

Now, your Honor, we object to that—The occasion I believe is remote and immaterial to the occurrence here on January 30th, 1966. The relationship was established that he was there, and the State would object for the reason it is remote, and also immaterial."

The defendant's offers to prove are as follows:

"The defendant offers to prove, and the witness will so testify if permitted by this Court, that in October, 1965, the defendant and said decedent met and the decedent had abnormal sexual relations with this defendant, and there was a sum of money paid to the defendant."

The court sustained the State's objections and overruled the defendant's offers to prove. The above is a resume of the essence of the alleged errors set forth in appellant's assignments of error numbered 6, 7, 8 and 9 of his motion for new trial.

The appellant in support of said alleged errors states: "The Court erred in sustaining each of the State's objections to each of the above questions propounded to appellant-defendant, as each of said questions and purported answers would have informed the jury of the relationship between the appellant-defendant and said decedent. It would have informed

the jury that said parties were not strangers and were on an apparently friendly relationship; and, said relationship would have been a matter for the jury to determine in considering any criminal intent or malice by appellant-defendant against the said decedent." Appellant cites Section 13 of the Bill of Rights, Indiana Constitution which provides in part as follows:

"Rights of accused.—In all criminal prosecutions, the accused shall have the right—to be heard by himself . . ."

The appellant argues that the right to be heard was denied him in that he was not permitted to explain his relationship with the deceased on three prior occasions in September, October and November of 1965, approximately two (2) to five months prior to the time of the alleged crime. On those occasions he submitted to the decedent's advances to accomplish fellatio upon him and for such submission he received pay from the decedent.

The evidence sought to be placed before the jury would have shown that the deceased had seduced and induced the appellant to submit to his fellatio oriented sexual advances *for pay* on several occasions. Assuming, *arguendo,* that this evidence would have tended to inform the jury that the defendant and decedent "were not strangers, were on an apparent friendly relationship" on various occasions two to five months prior to the offense, such evidence would not necessarily be indicative of the lack of purpose to kill with malice at the time of the offense, as charged in the indictment. Indeed, it might be argued that the trial court's exclusion of such evidence was an exercise of judicial discretion *for the benefit of the appellant.* Such evidence very possibly could have prejudiced the jury against the defendant on the basis of his turpitude. At the time of the ruling, excluding the evidence of prior abnormal and unnatural sexual acts between defendant and decedent, the trial court indicated such a concern with the observation that ". . . the defendant may show

that they were not total strangers by omitting such evidence . . ."

It should be noted the trial court did not deny the defense the right to show "an apparent friendly relationship" pre-existing between him and decedent by other evidence. However, the defense did not elect to place any other evidence bearing upon their acquaintance or association which conceivably might have been admissible as bearing on lack of malice.

We conclude that the appellant was not harmed or prejudiced by the trial court's exclusion of evidence which would have been indicative of his own turpitude on the occasions referred to. Therefore, we hold that the appellant has wholly failed to demonstrate reversible error in assigned causes numbered 6, 7, 8 and 9.

We now direct our attention to causes numbered 10 and 11 of the appellant's motion for a new trial presented by his assignment of error. They are as follows:

1. The verdict of the jury is contrary to law, and

2. The verdict of the jury is not sustained by sufficient evidence.

On the basis of the record before us, these causes raise only a challenge to the sufficiency of the evidence to support the verdict. *Chapman* v. *State* (1901), 157 Ind. 300, 61 N. E. 67; *Deal* v. *State* (1894), 140 Ind. 354, 39 N. E. 930; *Stout* v. *State* (1881), 78 Ind. 492.

Appellant was charged with murder in the first degree but found guilty of murder in the second degree, a lesser included offense. Murder in the second degree is defined by statute as follows:

"Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree . . ." Ind. Stat. Anno. § 10-3404 (1956 Repl.)

Thus defined, the crime of second degree murder is composed of:

1. The killing of a human being.
2. The accompaniment of such killing with purpose and malice.

See: *Dickinson* v. *State* (1944), 222 Ind. 551, 55 N. E. 325; *Landreth* v. *State* (1930), 201 Ind. 691, 171 N. E. 192; *Brooks* v. *State* (1883), 90 Ind. 428.

Concerning the first element, the sufficiency of the evidence to establish beyond a reasonable doubt that appellant killed one Floyd Williams, is neither challenged nor disputed in the case at bar.

The entire thrust of appellant's argument is that the evidence is insufficient to prove beyond a reasonable doubt, that he killed Floyd Williams *with purpose and malice.*

For the element of purpose to exist, the evidence must prove beyond a reasonable doubt that appellant intended to kill the decedent. *Landreth* v. *State, supra; Fahnestock* v. *State* (1864), 23 Ind. 231.

For the element of malice to exist, the evidence must prove beyond a reasonable doubt that appellant acted with anger, hatred, revenge, a heart regardless of social duty and fatally bent on mischief, ill will, or any other unlawful or unjustifiable motive toward the decedent. *Brown* v. *State* (1934), 206 Ind. 223, 189 N. E. 133; *Harris* v. *State* (1900), 155 Ind. 265, 58 N. E. 75; *Davidson* v. *State* (1893), 135 Ind. 254, 34 N. E. 972.

Neither of these elements need be proved by positive evidence, but may be inferred from the circumstances of the case, especially from the deliberate use of a deadly weapon in a manner calculated to cause death. *Sparks* v. *State* (1964), 245 Ind. 245, 195 N. E. 2d 469; *Baker* v. *State* (1964), 244 Ind. 150, 195 N. E. 2d 91; *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633; *Schlegel* v. *State* (1958), 238 Ind. 374,

150 N. E. 2d 563; *Pitts* v. *State* (1939), 216 Ind. 168, 23 N. E. 2d 673; *Welty* v. *State* (1912), 180 Ind. 411, 100 N. E. 73; *Walker* v. *State* (1893), 136 Ind. 663, 36 N. E. 356.

The existence of both of these elements is a matter for the determination of the jury, *Landreth* v. *State, supra,* reversible on appeal only where there is an absence of evidence of probative value to support such determination beyond a reasonable doubt. *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

Under causes 10 and 11 of the appellant's assignment of errors, he further argues that the State has failed to establish malice and purpose for the reason that the killing was done in self-defense and was, therefore, a justifiable homicide. The position taken by the appellant in this regard is advanced in his brief as follows:

> "In the facts of the case at bar there is evidence showing the surrounding of said killing and justification of the same in self-defense, and it is the appellant's position that the fictitious presumption of malice created by law yields before the evidence submitted by said appellant showing the true facts, and the burden of proof did not shift to this appellant, and that said malice and purpose has not been proven beyond a reasonable doubt by the State of Indiana."

An examination of the record in the case at bar as related to the elements of malice and purpose and to the defense of self-defense the record reveals the following:

Donald L. Perigo, Warrick County Coroner, testified that upon examining Williams' body he found a cut on the chin and one on the eyebrow and gunshot wounds as follows: "Three in the right shoulder, one in the middle of the back and one over on the (left) side." Dr. Wyant J. Shively, State's witness who performed an autopsy upon Williams' body, testified that the following bullet entrance wounds were found in Williams' body: (1) One in the posterior lateral chest (which would be in the back and to the side); (2) Three in the shoulder (one posteriorly, one almost laterally and one a little

bit interiorly) ; and (3) One in the back, to the left of the midline. David Jenkins, State's witness, testified that he was with appellant on the night of the killing and that appellant made the comment that Williams (decedent) could be *easily robbed* and that he heard appellant talking about some *easy money*. Charles Dillingham, State's witness, testified that appellant asked him several times if he wanted to make a hundred dollars, and asked him (Dillingham) if he (appellant) could use his gun. Dillingham said he had refused permission to do so. The appellant testified in spite of said refusal he returned to Dillingham's home and took the gun without his (Dillingham's) permission after the latter had gone to sleep. Dillingham further testified that later that night appellant told Dillingham that he had shot Williams and handed him the gun which had six empty shells in it. Dillingham's gun and bullets found in Williams' body were ballistically connected. Paul Houston, State's witness, testified that appellant told him he had shot Williams. Kenneth Houck, State's witness, testified that the overcoat had holes in it corresponding with those in decedent's body but did not have any powder burns on it.

It is well established in this State that the use of a deadly weapon against an unarmed person in a manner likely to produce death is sufficient evidence for the jury to conclude malice existed. *King* v. *State* (1968), 249 Ind. 699, 234 N. E. 2d 465.

Furthermore, the jury could have easily inferred from the State's evidence that the killing in this case grew out of an attempt by appellant to rob the decedent. Thus, there is ample evidence in the record to support the jury's conclusion that malice and purpose have been proved unless appellant's claim of self-defense should have been upheld.

Appellant has claimed throughout these proceedings that in killing Williams he acted in self-defense. As we said in *King* v. *State, supra,*

"Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

(1) he acted without fault,

(2) he was in a place where he had a right to be, and

(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.

*Bullard* v. *State* (1964), 245 Ind. 190, 195 N. E. 2d 856, 197 N. E. 2d 295; *Hightire* v. *State* (1966), 247 Ind. 164, 213 N. E. 2d 707. The burden is upon the State to show that defendant does not meet one or more of these requirements. *Dorak* v. *State* (1915), 183 Ind. 622, 109 N. E. 771. Whether the State has borne its burden of showing that the homicidal act was not carried out in self-defense is a question of ultimate fact to be decided by the jury. *Robinson* v. *State* (1962), 243 Ind. 192, 184 N. E. 2d 16." 234 N. E. 2d at 468.

The State's evidence in this case, as summarized above, easily supports inferences that the appellant did not act without fault and was not in danger of death or great bodily harm at the time of the shooting. The testimony as to defendant's statements about robbing decedent, and the State's showing that no powder burns appeared on decedent's bullet-riddled overcoat would support both of these inferences.

The jury has made a valid determination within the bounds of reasonableness since there is substantial evidence of probative value to support its inferences and conclusions, and this Court, under such circumstances, is bound to hold that there is sufficient evidence to support the verdict.

For all the foregoing reasons, the verdict and judgment of the trial court is affirmed.

Judgment affirmed.

Lewis, C. J., and Arterburn, J., concur.

DeBruler and Jackson, JJ., concur in result.

NOTE.—Reported in 241 N. E. 2d 244.