LAWRENCE R. NEFF *v.* STATE OF INDIANA

[No. 3-12767A292. Filed August 14, 1978.]

*Jeanne J. Swartz*, of South Bend, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendant-appellant Lawrence R. Neff was convicted following a trial to the jury of the offense of voluntary manslaughter and sentenced to the custody of the Indiana Department of Correction for a period of not less than two nor more than 21 years.

Appellant contends on appeal that the trial court erred in overruling his motion for judgment on the evidence, that the evidence is insufficient to support the finding that appellant was sane at the time the offense was committed, that there was insufficient evidence of a sudden heat of passion induced by adequate provocation, and that the trial court erred in modifying a tendered instruction.

The record discloses that on May 4, 1967, appellant was indicted for second-degree murder in the beating death of his step-daughter, Alice Marie Neff. Subsequently, two disinterested physicians were appointed to determine appellant's sanity. After the physicians submitted their reports, a hearing was held which led to a finding that appellant was "unable to comprehend with sufficient understanding the nature of the criminal action against him, the proceedings thereon and to make a proper defense for himself." Accordingly, the trial court ordered appellant committed to the Maximum Security Division of the Dr. Norman Beatty Memorial Hospital.

On February 16, 1972, the acting superintendent of Norman Beatty Hospital reported that appellant was then able to stand trial. Thereafter the trial court granted the prosecuting attorney's motion to return appellant for trial.

On April 21, 1972, appellant entered a plea of guilty to the lesser included offense of voluntary manslaughter and was sentenced to imprisonment for two to 21 years. On October 3, 1975, the trial court granted appellant's amended petition for post-conviction relief and allowed appellant to withdraw his plea of guilty. Appellant then entered a plea of not guilty to the offense of voluntary manslaughter on October 17, 1975. Later the trial court rejected a plea agreement whereby appellant would plead guilty to involuntary manslaughter and, having served the maximum penalty imposed for such offense, would be released from custody.

On April 26, 1976, appellant filed a plea of not guilty by reason of in-

sanity and the court subsequently appointed two disinterested physicians to examine the appellant and testify at trial. Following trial, the jury found appellant guilty as charged and further found that appellant was sane at the time of the commission of the offense.

Appellant first contends that the trial court erred in overruling his motion for judgment on the evidence made at the close of the State's evidence. After the trial court denied the motion, appellant called Robert Seals as a witness in his case-in-chief. Such introduction of evidence by appellant after the overruling of his motion for judgment on the evidence constitutes a waiver of any error in the overruling of such motion.

*Downs v. State* (1977), 267 Ind. 342, 369 N.E.2d 1079;

*Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d 110.

Appellant's challenge to the sufficiency of the evidence is focused upon two distinct points: (1) whether there was sufficient evidence as to appellant's sanity at the time the offense was committed; and (2) whether there was evidence of a sudden heat of passion induced by adequate provocation.

With regard to the sufficiency of evidence to support the finding of sanity, Dr. Frank Hogle testified that in his opinion appellant was unable to conform his conduct to the requirements of the law. Dr. Glenn Harris was unable to form an opinion as to appellant's sanity. Appellant concedes that expert testimony is not conclusive upon the issue of a criminal defendant's sanity.

*Stamper v. State* (1973), 260 Ind. 211, 294 N.E.2d 609;

*Fitch v. State* (1974), 160 Ind.App. 697, 313 N.E.2d 548.

Lay testimony on the issue of sanity is proper and may be credited over that of expert witnesses.

*Wilson v. State* (1975), 263 Ind. 469, 333 N.E.2d 755;

*Blake v. State* (1975), 262 Ind. 659, 323 N.E.2d 227;

*Richardson v. State* (1976), 170 Ind.App. 212, 351 N.E.2d 904;

*Fitch v. State, supra.*

Appellant states that "the only evidence of any probative value from which the jury could reasonably infer sanity is the testimony of the officers." Appellant does not attempt to demonstrate any inadequacy in the police officers' testimony which would render it insufficient to support a guilty verdict, but merely points to other evidence from which the jury could infer that appellant was insane. Such an argument does no more than ask this Court to weigh the evidence. This we cannot do.

Appellant further contends that the evidence is insufficient to show a sudden heat of passion induced by adequate provocation.

The evidence most favorable to the State discloses that on the evening of February 3, 1967, Alice Marie Neff came home from school and told appellant she had received some clothes from her teacher. Appellant got angry and stated he did not want charity from anyone. Appellant then accused Alice of lying and of seeing her grandparents instead. Alice insisted she got the clothes from the teacher. Appellant started hitting Alice and then made a "cat-o-nine tails" from electric wire and began whipping her. Appellant then picked Alice up by her feet, dropping her head against the floor approximately eight or nine times. Appellant warned his wife not to interfere or he would also beat her.

Mrs. Neff filled the sink with water preparing to give Alice a bath. Appellant picked Alice up and submerged her head in the water saying he was going to drown her. Mrs. Neff interposed, stating she wanted to give Alice a bath. Appellant replied, "Well, after you give her a bath I want you to drown her." As Mrs. Neff was taking Alice from the water, appellant seized her and held her head underneath the faucet.

Afterwards, appellant grabbed Alice around the waist and butted her head against and through the dining room wall and then against and through the bathroom wall. When Mrs. Neff tried to stop appellant, he again warned her not to interfere or she would get the same thing.

Later that evening, appellant went downstairs to check the furnace. Alice started to follow, Mrs. Neff called to her to return, but Alice stated, "I want to go down with daddy." Alice descended to about the second or third step and slipped and fell. Appellant picked her up and carried her upstairs to the living room whereupon he started asking her questions again and accused her of lying to him. Appellant started beating

her again with the "cat-o-nine tails." Mrs. Neff stepped in, but appellant picked up a bat and threatened to kill Mrs. Neff if she interfered again.

Appellant told Mrs. Neff to go to the grocery store. When she returned, Alice was lying on the bed. Mrs. Neff sat on the bed with her and asked what happened. Appellant said, "Never mind what happened. Go call the doctor."

Thereafter, Alice was taken to the hospital by ambulance. At the time of her admission to the hospital, Alice was in an unconscious state and vomiting. She had "bruises all over the side of the head, over the chin, over the face and bruises all over the arms and legs and the backend of the buttocks." She was in a state of deceraba in which the center portion of the brain is so damaged that it does not work correctly and the patient gets very rigid in the arms, legs, and body, and the neck is pulled back. Alice died on the morning of February 7, 1967, as a result of severe brain damage.

Mrs. Neff testified that appellant was drinking both whiskey and wine on the evening of February 3, 1967.

Appellant contends that the evidence is insufficient to support the verdict of voluntary manslaughter because there was no evidence of a sudden heat of passion engendered by adequate provocation. The essence of appellant's argument is that there is no evidence that Alice Marie Neff did anything to provoke appellant, mere words alone being insufficient. However, such an argument confuses the sudden heat requirement as it applies to the offense of voluntary manslaughter and as it relates to the requirement of malice in the murder offenses.

Perhaps this feature of voluntary manslaughter can best be understood by an examination of the law of homicide as it existed at common law. The English common law began its analysis of homicide cases with a determination of whether the homicide had been committed with malice aforethought. If this was found lacking, the analysis then shifted to the other end of the spectrum for a determination of whether there was any justification or excuse. Manslaughter was a catch-all category lying between the more serious crime of murder and the noncriminal homicides occurring under circumstances of justification or excuse. R. Perkins, *Criminal Law*, at 51 (2d Ed. 1969).

The homicide offenses are defined by statute in Indiana but still retain many of the concepts found at common law. First-degree murder is defined as the killing of a human being purposely and with premeditated malice. IC 1971, 35-13-4-1 (Burns Code Ed.).[1] If there is no premeditation, and the killing is done "purposely and maliciously" the offense is second-degree murder. IC 1971, 35-1-54-1 (Burns Code Ed.).[2] Malice is a necessary element of both degrees of murder and has been defined as follows:

> "On the one hand, malice may be defined in a positive fashion. Blackstone defined malice, which even then distinguished murder from other homicides, as 'any evil design in general; the dictate of a wicked, depraved and maligant heart.' 4 W. Blackstone, *Commentaries* * 198. Several Indiana cases have adopted versions of this definition: *Blackburn v. State* (1973), 260 Ind. 5, 291 N.E.2d 686; *Helms v. State* (1968), 251 Ind. 335, 241 N.E.2d 244; *Brown v. State* (1934), 206 Ind. 223, 189 N.E. 133; *Harris v. State* (1900), 155 Ind. 265, 58 N.E. 75; *Davidson v. State* (1893), 135 Ind. 254, 34 N.E. 972.

> "On the other hand, malice may also be defined in a negative fashion. It is that state of mind which exists when one purposely kills another not in the heat of passion induced by sufficient provocation, e.g. *Willaims (sic) v. State* (1925), 196 Ind. 84, 93, 147 N.E. 153, not excused, as when acting in self-defense, e.g. *Taylor v. State* (1929), 201 Ind. 241, 167 N.E. 133, and not justified, as when killing in military combat. R. M. Perkins, A Rationale of Mens Rea, 52 Harv. L. Rev. 905, 915-17 (1939); R. M. Perkins, A Re-Examination of Malice Aforethought, 43 Yale L.J. 537, 567-70 (1934); 4 W. Blackstone, Commentaries * 201."

*McKinstry v. State* (1975), 264 Ind. 29, at 35, 338 N.E.2d 636, at 640.

This latter definition demonstrates the relationship between the men-

---

1. The statute also defines several other homicides which are first-degree murder. However, those other definitions are not relevant to this discussion. IC 1971, 35-13-4-1 (Burns Code Ed.), was repealed, effective October 1, 1977, by Acts 1976, P.L. 148, § 24. IC 1971, 35-42-1-1 (1977 Burns Supp.), defines the offense of murder as follows:

> "A person who: (1) Knowingly or intentionally kills another human being; or (2) Kills another human begin (sic) while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony."

2. This statute was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.

tal elements involved in the various homicide offenses. This relationship was explained by our Supreme Court in *Dennison v. The State* (1859), 13 Ind. 510, at 511-512, as follows:

"If a sane man, without accident, justification, or any provocation, suddenly kill another, even a stranger, the act must be attributed to malice, because it could be accounted for upon no other hypothesis, based upon the laws governing the action of the mental and moral faculties of man. Such an act would evince a degree of depravity of heart, almost excluding the possibility of any higher moral feeling than malice against all mankind. But human experience will bear witness that provocation may excite a transport of passion, accompanied by a momentary intention to kill the dearest and most beloved friend, against whom no malice exists. And passion, upon sufficient provocation, tends to rebut the presumption of malice."

Malice may be inferred from facts which disclose that a homicide resulted from an intentional act.

*Gordy v. State* (1974), 262 Ind. 275, 315 N.E.2d 362;

*Butler v. State* (1967), 249 Ind. 484, 229 N.E.2d 471;

*See:* *Welty v. State* (1912), 180 Ind. 411, 100 N.E. 73;

*Ex parte Moore* (1868), 30 Ind. 197.

Thus malice may be implied from the intentional use of a deadly weapon in a manner reasonably calculated to cause death or great bodily injury.

*Sypniewski v. State* (1977), 267 Ind. 224, 368 N.E.2d 1359;

*Shutt v. State* (1977), 267 Ind. 110, 367 N.E.2d 1376;

*Strickland v. State* (1977), 265 Ind. 664, 359 N.E.2d 244;

or from any deliberate or cruel act by one person against another.

*Covington v. State* (1975), 262 Ind. 636, 322 N.E.2d 705;

*Corbin v. State* (1968), 250 Ind. 147, 237 N.E.2d 376;

*Wahl v. State* (1951), 229 Ind. 521, 98 N.E.2d 671.

The inference of malice thus arising is valid and can alone support

a verdict. *Shutt v. State, supra.* However, the inference of malice may be rebutted by evidence that the killing was the result of a sudden heat of passion induced by sufficient provocation.

*Lawson v. State* (1978), 267 Ind. 668, 373 N.E.2d 128;

*Shutt v. State, supra;*

*Gordy v. State, supra;*

*See: Welty v. State, supra;*
       *Ex parte Moore, supra.*

In such instances, the offense is reduced from murder to manslaughter.

*Love v. State* (1977), 267 Ind. 302, 369 N.E.2d 1073;

*Dickens v. State* (1973), 260 Ind. 284, 295 N.E.2d 613;

*Yarber v. State* (1962), 242 Ind. 616, 179 N.E.2d 882.

This mitigation of the degree or grade of homicide is referred to as the rule of provocation. In *Dickens v. State, supra*, 260 Ind. at 293, 295 N.E.2d at 618, our Supreme Court stated the rule of provocation, as follows:

"[A]ll that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection."

Voluntary manslaughter is therefore defined as the voluntary[3] killing of a human being without malice in a sudden heat. IC 1971, 35-13-4-2, *supra*.[4] Killing "without malice in a sudden heat" is the element which distinguishes voluntary manslaughter from murder.

---

3.  A "voluntary" killing is one done by the free exercise of the will, done by design, purposely. *Murphy v. The State* (1869) 31 Ind. 511. *See also: Ketring v. State* (1936), 209 Ind. 618, 200 N.E. 212.

4.  This statute was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. The new Penal Code defines voluntary manslaughter as follows:

"(a)  A person who knowingly or intentionally kills another human being while

*Love v. State, supra;*

*Dickens v. State, supra.*

As stated by our Supreme Court in *Hasenfuss v. State* (1901), 156 Ind. 246, at 249, 59 N.E. 463, at 465:

"Voluntary manslaughter possesses the common element of murder in both its degrees — the intention to kill — but it is distinguished from these crimes by an absence of malice, and, of course, premeditation. The statute might be thus paraphrased without doing violence to its meaning:

Voluntary manslaughter is an unlawful, intentional killing of a human being, without malice and without premeditation. Although the statute adds 'upon a sudden heat,' it is only in the application of the definition to a given case that this element must be made use of, for there could be no such thing as an unlawful intentional killing without malice, unless it was done upon a sudden heat. This mitigating fact reduces the crime to manslaughter, if upon the whole evidence it appears sufficient to rebut the presumption of malice arising from a voluntary killing."

"Sudden heat" serves to negate the inference of malice and is not itself an indicia of culpability except insofar as it connotes a state of mind which would not disclose circumstances constituting justification or excuse.

In the case at bar, appellant was charged with the offense of voluntary manslaughter. His argument is based upon a lack of provocation sufficient to engender a sudden heat of passion. However, the rule of provocation is a rule which evolved as a factor of mitigation so as to reduce a homicide from murder to manslaughter.

The facts in the case at bar clearly point out the anomaly of applying the rule of provocation when voluntary manslaughter is the offense charged. In such a case, the charge of voluntary manslaughter  itself provides the mitigation. Thus, when voluntary manslaughter is the offense charged in the indictment or in-

acting under sudden heat commits voluntary manslaughter, a class B felony.

"(b)   The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1 (1) [35-42-1-1(1) of this chapter to voluntary manslaughter." IC 1971, 35-42-1-3 (1977 Burns Supp.).

formation and becomes the final pleading upon which the case is tried, the charging vehicle should be construed as a judicial admission that the mitigating factor of sudden heat exists and is sufficient to negate the inference of malice. As demonstrated by the definition of malice delineated in *McKinstry v. State, supra,* 264 Ind. 29, 338 N.E.2d 636, once a purposeful killing is shown, the offense is either murder, manslaughter, or no crime at all. The *McKinstry* equation can be changed to focus upon the element of sudden heat. The *mens rea* for voluntary manslaughter can thus be defined as the state of mind that exists when one purposely kills another without malice and not under circumstances of justification or excuse. As stated in *Hasenfuss v. State, supra,* there is no such thing as an unlawful intentional killing without malice, unless done upon a sudden heat. The charge of voluntary manslaughter prevents the State from showing malice, and thus satisfies that portion of the equation. In other words, the judicial admission precludes the State from proving second-degree murder. The *mens rea* for voluntary manslaughter can then be proved by evidence that the killing was not justified or excused.

This does not violate the due process considerations found in *Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508. That decision concerned a Maine law which required a defendant charged with murder to prove by a preponderance of the evidence that he acted "in the heat of passion on sudden provocation" in order to reduce the homicide to manslaughter. If the homicide was both intentional and unlawful, the Maine law of homicide conclusively presumed malice aforethought unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. The Supreme Court held that placing on the defendant the burden of proving the critical factor in dispute — the presence or absence of the heat of passion on sudden provocation — violates due process.

The case at bar is distinguishable from *Mullaney* in several respects. Indiana law does not have a conclusive presumption of malice after certain basic facts are shown. Rather Indiana law permits an inference of malice to arise from the proof of certain basic facts. The inference is rebuttable, and the prosecution still has the ultimate burden of persuasion on the issue. The case at bar does not shift the burden of persuasion from the State to the appellant, but rather places the rule of pro-

vocation in its proper perspective when voluntary manslaughter is the offense charged. The State concedes that the more serious state of mind necessary for murder does not exist. What the State must then prove is that there was a purposeful homicide which was committed without circumstances of justification or excuse, and it must prove this beyond a reasonable doubt. And, as was stated in *Mullaney*, such may be shown by adducing evidence of the factual circumstances surrounding the commission of the homicide.

In the case at bar, there was sufficient evidence that appellant voluntarily killed another human being. There was evidence of anger and sudden resentment of appellant against the deceased. There was no evidence that the homicide was legally justified or excused. The State conceded there was no malice. Consequently, the jury could reasonably infer that the offense was committed "without malice in a sudden heat."

Appellant next contends that the trial court erred in modifying his tendered instruction by striking therefrom the sentence "[w]ords only cannot constitute sufficient provocation." However, since the rule of provocation was not properly an issue in the case at bar, there was no error in so modifying the instruction.

No reversible error having been shown the judgment of the trial court must be affirmed.

Judgment affirmed.

Robertson, J., participating by designation, concurs.

Staton, J. concurs in result.

NOTE—Reported at 379 N.E.2d 473.