Van JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–9304–CR–166.

Court of Appeals of Indiana,
Second District.

Dec. 29, 1994.

Montague M. Oliver, Jr., Montague M. Oliver, Jr. & Associates, Anderson, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Dr. Van Johnson appeals from his conviction for voluntary manslaughter, a Class A felony. The facts most favorable to the judgment disclose that on the evening of June 10, 1990, James Wagner was at an apartment complex in Anderson, Indiana, collecting money from customers of his children's newspaper route. When Wagner came to the door of Johnson's apartment, Johnson opened the door and shot Wagner in the chest. Wagner died almost instantly.

Johnson dragged Wagner's body from the porch into his apartment. He then called his attorney. Approximately twenty minutes after the shooting, Johnson called 911 to report that he had "accidentally" shot someone. When the police arrived at Johnson's apartment, they knocked on the door but did not receive an answer. After knocking a second time, Johnson opened the door very slowly and said, "I am not armed." Inside the apartment was Wagner's body. Johnson showed the police officers the shotgun he had used to kill Wagner and admitted that he also had a nine millimeter handgun in the apartment. Johnson was read his *Miranda* rights. Johnson stated that he had already talked to his attorney and that he wished to explain what had happened.

Johnson stated that he saw an unfamiliar man looking in his window. Having no idea who the man was, Johnson went to get his gun but was unable to find it. Johnson said he then went to his bedroom and grabbed his loaded shotgun and opened the front door. Johnson claimed that when he opened the front door Wagner "rushed" him and that in response he "shot the sonofabitch." Johnson also stated that he had received telephone calls from the Ku Klux Klan (KKK) and that his office had recently been burglarized. On the drive to the police station, Johnson told the transporting officer that he was from Chicago and that "in Chicago we shoot people like this." He also stated that he did not mean to kill Wagner but "that sonofabitch had threatened [my] life before."

Later that evening, Johnson gave a statement to the police. Johnson repeated that he did not wish to kill Wagner, but that he had received threats recently, and that Wagner should not have been looking in his window. Johnson also admitted that Wagner did not have a weapon in his hands but insisted that "the guy rushed me." Johnson also claimed that a couple of weeks prior to the shooting, people opened his apartment door, breaking the locks, and claiming they were there to inspect the fire extinguisher. Although Johnson had a blood alcohol content of .22% at 2:20 A.M., he was courteous, lucid, well-behaved, responsive to the officers, and did not appear to be impaired the evening of the shooting.

On June 14, 1990, Johnson was charged with murder. On December 17, 1990, Johnson filed a belated motion to interpose the defense of insanity. After several hearings on Johnson's sanity at the time of the offense and his competency to stand trial, the court denied Johnson's request, and a jury trial began on May 28, 1992. The trial court granted Johnson's motion to reconsider the request to be granted leave to raise the insanity defense and after further hearings again denied the request.

At trial, the State was permitted, over Johnson's objection, to present evidence regarding a fire extinguisher inspection which Johnson had told the police about on the evening of the shooting. Also at trial, John-

son attempted to present testimony that he claimed would corroborate his statements that he had previously received threats. The trial court refused Johnson's requests, claiming that they were not relevant to a claim of self-defense. However, some corroborating evidence was admitted despite the court's ruling. At the conclusion of the evidence, the trial court refused Johnson's tendered self-defense instruction on the grounds that there was no evidentiary basis to support the giving of the instruction. Thereafter, the jury found Johnson guilty of the lesser included offense of voluntary manslaughter. He was sentenced to an enhanced sentence of forty years' imprisonment. Johnson now appeals.

Six issues are presented for our review:

(1) whether the trial court abused its discretion in refusing Johnson's petition to file a belated notice of insanity defense;

(2) whether the trial court erred in admitting evidence of a prior incident in which Johnson used a firearm;

(3) whether the trial court erred in excluding evidence of the alleged threats received by Johnson from the KKK and a local hospital;

(4) whether the trial court erred in refusing to instruct the jury on the affirmative defense of self-defense;

(5) whether Johnson was denied effective assistance of counsel when counsel failed to file a timely notice of intent to use an insanity defense; and

(6) whether Johnson's enhanced sentence was supported by sufficient aggravating facts.

■ Johnson argues that the trial court abused its discretion in not permitting a belated insanity defense to be raised. A defendant intending to interpose the defense of insanity must file notice with the trial court no later than twenty days, if the defendant is charged with a felony, before the omnibus date. IND.CODE § 35–36–2–1 (1988 Ed.). However, after that time the court may in the interest of justice and upon a showing of good cause permit the filing to be made at any time before the commencement of trial.

*Id.* Whether to allow the filing of a belated notice is a matter within the trial court's discretion. *Eveler v. State* (1988), Ind., 524 N.E.2d 9, 11. An abuse of discretion occurs only when the court's ruling is against the logic and effect of the facts and circumstances. *See Hazelwood v. State* (1993), Ind. App., 609 N.E.2d 10, 13, *trans. denied.*

Johnson filed a belated notice of his intent to rely on an insanity defense on December 17, 1990, more than four months after his August 10, 1990 omnibus date. Thus, Johnson failed to file his notice within the time restraints imposed by IND.CODE § 35–36–2–1. Therefore, it was within the trial court's discretion to determine whether good cause had been shown for the delay and whether it was in the interest of justice to permit Johnson to plead the defense of insanity. *See Cornelius v. State* (1981), Ind., 425 N.E.2d 616, 619.

■ At the pretrial hearings on the issue of Johnson's psychological condition, Johnson's attorneys admitted they were concerned in July of 1990 that Johnson may have been suffering from mental problems. Further, as early as July 9, 1990, defense counsel indicated to the deputy prosecutor that insanity was a possible defense. However, it was not until after defense counsel received a written report from Dr. Strain on October 2, 1990, and Dr. May on December 17, 1990, that a petition for permission to file a belated insanity defense was filed. Johnson contends that his counsel had good cause to proceed with caution before they raised the defense of insanity given Johnson was a practicing psychiatrist himself. It is not doubted that counsel may often see a need for proceeding with caution, no matter what the defendant's profession. This does not, however, relieve the defendant of filing a timely petition. As noted by the trial court, defense counsel had sufficient information to allow them to file a timely notice of insanity.

■ Moreover, the trial court did not abuse its discretion in determining that it was not in the interest of justice to allow Johnson to raise the belated defense. Mental illness is not a defense to a crime unless the illness is so severe as to render the

defendant unable to appreciate the wrongfulness of the conduct at the time of the offense. *Higgins v. State* (1992), Ind., 601 N.E.2d 342, 343; IND.CODE § 35–41–3–6. Expert testimony is not conclusive on the issue of a defendant's sanity. *See Neff v. State* (1978), 177 Ind.App. 248, 250, 379 N.E.2d 473, 476. Rather, all relevant evidence on the issue of insanity including the testimony of laypersons and the circumstances surrounding the crime itself will be assessed. *Gregg v. State* (1976), 171 Ind.App. 363, 367, 356 N.E.2d 1384, 1386, *cert. dismissed* 434 U.S. 804, 98 S.Ct. 33, 54 L.Ed.2d 62. (1977).

█ Prior to trial, extensive hearings were conducted as to both Johnson's competency to stand trial and his sanity at the time of the shooting. At the January 25, 1991 hearing, an assessment by Dr. Strain, a clinical psychologist, was introduced into evidence. The assessment stated that Johnson's "conscience structure appears to be intact" and that "[h]e is capable of remorse, feelings of guilt and shame." However, Dr. May, a psychiatrist, reported that Johnson was temporarily insane at the time of the shooting and that as to this incident he was unable to fully understand what he was doing. Dr. May also testified similarly at the May 6, 1991 hearing. He further stated that he believed that Johnson was incompetent to stand trial. The trial court then ordered an independent evaluation of Johnson's competency to stand trial. Doctors Davis and Murray, both psychiatrists, were appointed by the court to evaluate Johnson. Dr. Davis opined that Johnson was incompetent to stand trial; whereas, Dr. Murray reached the opposite conclusion.

Additionally, there was evidence before the court that after shooting Wagner, Johnson pulled the body from the front porch into his apartment. As pointed out by the State, Johnson then had the presence of mind to call his attorney and finally call 911. These are actions from which it can be inferred that Johnson appreciated the wrongful nature of his conduct. *Cf. Gardner v. State* (1981), 275 Ind. 655, 659, 419 N.E.2d 749, 751 (despite expert testimony to the contrary, evidence that the defendant cut telephone wires in the house so as to prevent victims from calling for help and subsequent to the attack went to the home of a police officer neighbor and then to the police station to report his conduct support finding that defendant was aware of the wrongful nature of his conduct). Further, the arresting officers indicated that Johnson's appearance and conduct appeared to be normal. The trial court indicated that although the psychiatrist's conclusion that Johnson suffered from some mental problems may be accurate, the court was not convinced that the doctors were properly using Indiana's statutory definition of sanity. Therefore, the court concluded that it was not in the interest of justice to allow Johnson to file a belated notice of insanity defense.

As demonstrated above, the court was presented with substantial evidence that Johnson had sufficient capacity to appreciate the wrongfulness of his conduct. *See* IND. CODE 35–41–3–6. The trial court did not abuse its discretion in denying Johnson's belated motion.

Johnson also argues that the trial court erred in admitting evidence of a prior incident in which he used a firearm. In his statement to the police, Johnson stated that three weeks prior to shooting Wagner, two people had come to his front door, unlocked both locks, and pushed in his front door under the guise of inspecting the fire extinguisher. Johnson's statement was properly admitted at trial. *See Hughes v. State* (1989), Ind., 546 N.E.2d 1203, 1207–08 (testimony tending to show an accused's attempt to conceal implicating evidence may be considered by the trier of fact as relevant because it reveals a consciousness of guilt). Over Johnson's objection, the State introduced the testimony of Sherry Granger, a housekeeper for Cross Lakes Apartments, and James Laymen, who both conducted the inspection of the fire extinguishers at Johnson's apartment complex. Granger testified that a notice of inspection had been posted approximately three days before. Following procedure, she knocked twice and announced herself before attempting to use her pass key to enter Johnson's apartment. Johnson was present in the apartment and had the security chain on the door. Johnson opened the front door and pointed a handgun at Granger's chest, telling her that when he had

lived in Chicago his apartment had been broken into. Johnson then stated that he could shoot her. Johnson now claims that it was reversible error to admit this evidence.

■ In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, the Indiana Supreme Court officially adopted Federal Rule of Evidence 404(b) as governing the admissibility of uncharged misconduct in this state. Ind. Evidence Rule 404(b) provides in part:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

Whenever the State attempts to introduce evidence of an instance of the defendant's prior uncharged misconduct, the trial court must look to see whether that evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime and whether its probative value outweighs its prejudicial effect. *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129. In the present case, the evidence was properly admitted to negate Johnson's claim of self-defense. Johnson's attempt to raise the affirmative defense directly placed his intent in arming himself before opening the door to Wagner into issue. *Cf. United States v. Pirovolos* (7th Cir. 1988), 844 F.2d 415, 422–23, *cert. denied* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119. Further, the evidence also demonstrates an absence of mistake or accident.

■ Next, Johnson contends that the trial court erred in excluding evidence of threats he allegedly received by the KKK and a local hospital for which he was employed. The trial court has wide latitude in determining the probative value of evidence including its possible prejudicial impact. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 460, *cert. denied* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. On review, this Court will reverse the trial court's ruling "only upon a showing that such discretion had been manifestly abused and the complaining party had been denied a fair trial." *Henderson v. State* (1983), Ind., 455 N.E.2d 1117, 1119.

■ Johnson contends that his offered evidence of the threats he had allegedly received from the KKK and the hospital was relevant to the issue of whether he had a reasonable belief that he was in danger of serious bodily injury. As the State recognizes, a person may use reasonable force to protect himself from what he reasonably believes to be the imminent use of unlawful force. The person may use deadly force only if he "reasonably believes that force is necessary to prevent serious bodily injury to himself...." IND.CODE § 35–41–3–2.

In the present case, the evidence Johnson sought to introduce was unconnected to the victim. There was no showing that Wagner was connected in any way to the alleged threats. Johnson's proffered evidence thus lends no credence to Johnson's claim that at the time he shot Wagner, he had a *reasonable* belief that deadly force was necessary to prevent serious bodily injury to himself.

> *See Woolum v. State* (1978), 178 Ind.App. 212, 220, 381 N.E.2d 1072, 1077 (evidence of general crime rate in the area is not relevant to justify the shooting of an individual who may appear to the defendant to be suspicious, thus no error in excluding the evidence);

> *see also Leming v. State* (1986), Ind.App., 487 N.E.2d 832, 834 (trial court did not abuse its discretion in excluding evidence of the defendant's prior beating when victim was not connected to the prior incident).

■ Johnson also argues that it was error for the trial court to refuse to instruct the jury on the affirmative defense of self-defense. The giving of an instruction is within the trial court's discretion and is reviewed only for an abuse of that discretion. *Tanner v. State* (1984), Ind., 471 N.E.2d 665, 667. In determining whether it was error for the trial court to refuse a tendered instruction, this Court must determine: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the

instruction is covered by other instructions given. *Baird v. State* (1992), Ind., 604 N.E.2d 1170, 1178, *cert denied* —— U.S. ——, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993). The proper standard for refusing a self-defense instruction is "whether the defendant *reasonably* believed that force was necessary to defend himself (or others) from an imminent threat of unlawful force; deadly force is justifiable only to prevent serious bodily injury." *Hughett v. State* (1990), Ind., 557 N.E.2d 1015, 1021 (Emphasis added.).

 Here, the evidence reveals that Wagner approached Johnson's apartment to collect for his children's paper route. Johnson claimed that he had seen Wagner looking into his window and did not recognize him. Thus, Johnson armed himself with a shotgun, opened his front door and shot and killed the unarmed Wagner, without exchanging a single word. This is not evidence which would justify the use of deadly force. The fact that Johnson may have been afraid in general does not provide him with an excuse or justification for shooting someone who is not the subject of the fear and who was not providing a threat to Johnson at the time. *See Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1366–1367, *aff'd sub nom. Whipple v. Duckworth* (7th Cir.1992), 957 F.2d 418 (trial court properly denied defendant's tendered instruction of self-defense where, despite the fact that the defendant was a victim of abusive parents, there was a complete absence of imminent or impending danger warranting the use of deadly force). The evidence fails to support the giving of an instruction on self-defense; thus, the trial court properly refused Johnson's tendered instruction.

 Johnson further contends that he was denied effective assistance of counsel. The standard to be applied when ineffective assistance of counsel is alleged is twofold: First, the defendant must prove counsel's representation fell below an objective standard of reasonableness under prevailing norms; and second, the defendant must prove that the substandard performance was so prejudicial he was deprived of a fair trial. *Burse v. State* (1987), Ind., 515 N.E.2d 1383, 1385 (*citing Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674).

In reviewing the competency of counsel, there is a presumption that counsel is competent. Johnson must present strong and compelling evidence to rebut the presumption. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 308. Our scrutiny is deferential and should not be distorted by hindsight; isolated poor strategy, inexperience, or bad tactics do not imply ineffectiveness. *Id.*

 Johnson asserts that because trial counsel failed to file a timely notice of intent to raise the defense of insanity, he was denied the effective assistance of counsel. Johnson, a licensed psychiatrist, who was found competent to stand trial and able to assist in his defense, maintained that he was sane at the time of the shooting. Trial counsel cannot be found incompetent for failing to file a notice of intent to raise a defense which Johnson, himself, did not believe applied to his case. Moreover, as previously discussed, both Johnson's competency to stand trial and his sanity were extensively examined prior to trial. Johnson has not met his burden of demonstrating that he was denied effective assistance of trial counsel.

 Finally, Johnson's challenges the sufficiency of the aggravating factor necessary to enhance his sentence. This Court will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B); *Berry v. State* (1990), Ind.App., 561 N.E.2d 832, 840. The trial court is vested with wide discretion to determine whether the presumptive sentence will be enhanced because of the particular defendant or crime. *Flores v. State* (1985), Ind., 485 N.E.2d 890, 895. Only one aggravating factor is necessary to enhance a sentence. *Berry*, 561 N.E.2d at 840; *Stewart v. State* (1988), Ind., 531 N.E.2d 1146, 1150.

 The presumptive sentence for a Class A felony is thirty years' imprisonment, which may be reduced by as many as ten years for mitigating circumstances and enhanced by as many as twenty years for aggravating circumstances. In the present case, the trial court specifically found the circumstances as noted by the State were

valid aggravating factors to support the enhancement of Johnson's sentence. These factors included: the risk that Johnson would commit another crime in light of his rash use of firearms when visitors came to his residence; the nature of the offense, including the fact that Wagner was unarmed and not trying to enter Johnson's home at the time; Johnson's callous disregard for Wagner's life, stating that he "blew [Johnson's] ass away" and "we do things like that in Chicago." The court also noted that Johnson tried to alter the circumstances surrounding the shooting by dragging Wagner's body into his apartment. Additionally, the court pointed out that Johnson did not show any remorse until sentencing. The mitigating factors recognized by the court were Johnson's productive life and lack of a criminal record.

We find the trial court's decision to be within its sound discretion. Therefore it will not be disturbed. *See Adkins v. State* (1990), Ind., 561 N.E.2d 787, 790. The judgment of the trial court is affirmed.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.